ZEICHNER ELLMAN & KRAUSE LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400

ROBERT W. RAY
(212) 826-5321
rray@zeklaw.com

WWW.ZEKLAW.COM

October 7, 2022

**BY ECF**

Honorable Ronnie Abrams
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

**Re: United States v. Carl David Stillwell,**
**(S10) 13 Cr. 521 (RA)**

Dear Judge Abrams:

This sentencing letter memorandum is submitted by counsel appointed pursuant to the Criminal Justice Act in support of defendant Carl David Stillwell and in advance of his re-sentencing scheduled for October 21, 2022 at 2:00 p.m.

As this Court is well aware, re-sentencing is occasioned by action of the U.S. Court of Appeals in vacating, on consent of the Government in light of *United States v. Davis*, 139 S.Ct. 2319 (2019), defendant's convictions on Counts One, Two and Four, and remanding the case for re-sentencing on Counts Three and Five, only. *See United States v. Hunter, et al.*, Dkt. No. 18-3074, summary ord. (2d Cir. Apr. 20, 2022).

The surviving counts include (i) a violation of the conspiracy to commit murder in a foreign country statute, 18 U.S.C. § 956 (a) (Count Three) and (ii) a violation of the money laundering conspiracy statute, 18 U.S.C. § 1956(h) (Count Five). Your Honor previously sentenced Mr. Stillwell back in October 2018 – four years ago – to 20 years' imprisonment (the statutory maximum) on Count Five and life imprisonment on Count Three. However, the latter sentence no doubt was affected by the statutory mandatory life sentence imposed on Mr. Stillwell as the result of his now vacated convictions on Counts One and Two.

Thus, to be clear, this re-sentencing is no longer governed or constrained by any statutory mandatory terms of imprisonment. Mr. Stillwell remains in custody serving his existing mandatory life sentence pending re-sentencing. He is incarcerated in Terre Haute USP, Indiana. He will appear for re-sentencing via video teleconference, on his consent. *See United States v. LeRoux*, No. 20-2184-cr, slip op. (2d Cir. June 3, 2022)

(sustaining CARES Act sentencing via video teleconference). Mr. Stillwell has been in custody since July 2015 and thus has already served over 87 months' imprisonment (equivalent to offense level 29; Criminal History Category I, under the Guidelines).

The U.S. Probation Department has prepared a Supplemental Presentence Report (the "PSR") nominally reflecting the impact of *United States v. Davis, supra,* but otherwise not updating, modifying or amending in any way the presentence report prepared in advance of Mr. Stillwell's initial sentencing. Indeed, the assigned probation officer responded to my written objections, dated September 21, 2022, to the PSR that "[a]ny issues/objections to the supplemental [PSR] can be addressed with [the] Court."

That response in a case like this one where a mandatory life sentence is no longer applicable is problematic, to say the least, because the case is now governed by the U.S. Sentencing Guidelines, the factors set forth in 18 U.S.C. § 3553(a), variance principles and now potentially "compassionate release" or at least a substantial sentencing reduction under the First Step Act and 18 U.S.C. § 3582(c)(1)(A) – all of which were brought to the attention of the assigned probation officer here and none of which had any effect whatsoever on the initial sentence in this case.

Nonetheless, we are mindful of the USPO's extant sentencing recommendation in this murder case that "[w]hile our sentencing recommendation is limited by the [no longer] applicable statutory mandatory sentences, we find them **fitting**[, that, is] . . . **appropriate** to address the defendant's participation in the **brutal murder** of Catherine Lee." PSR Sentencing Recommendation, Justification, ECF Doc. 826, page 29 of 43 (emphasis added). The Sentencing Guideline calculation by the Probation Office also remains: defendant's criminal history (none) is at Category I; and his adjusted offense level is 43. The Guidelines' calculation is thus still life imprisonment.

Our argument here is that such a sentence is no longer appropriate, in consideration of the relevant sentencing factors, as "just punishment." 18 U.S.C. § 3553(a)(2)(A). We make this argument for three principal reasons.

I.

Consideration should now be given to whether defendant Stillwell qualifies for a mitigating role in the offense adjustment. Although he performed an "essential" role as the driver of the van leading to the murder of Catherine Lee, he was – by all accounts – the defendant with the least decision-making authority among the conspirators and was not the shooter (although he was armed). Thus, we submit that he was "substantially less culpable" than his co-conspirators in this criminal activity. *See* U.S.S.G. § 3B1.2, Application Note 3(C). In addition, that view apparently was one shared by at least one juror at trial in this case. As the attached letter (Exhibit A hereto) reveals, Stillwell (as well

as his co-defendant Adam Samia) particularly warrant mitigating consideration as substantially less culpable than Paul LeRoux and Joseph Hunter. Indeed, the juror in effect argues for a sentence for Mr. Stillwell that is at "the absolute lowest sentence you can stand" and certainly not more time than that imposed against Paul LeRoux [twenty-five (25) years' imprisonment; or 300 months] – because such a result, in her view, would constitute "something incredibly unjust in our Judicial System." Accordingly, we contend that Stillwell at least qualifies for a downward mitigating role adjustment of three levels to adjusted offense level 40 [292-365 months' imprisonment].

To the extent that this Court concludes that defendant Stillwell is still not entitled to a mitigating role adjustment as we contend above, these factors are nonetheless ones that should warrant consideration for a sentencing variance outside of the otherwise applicable sentencing guideline range (see below).

II.

We believe further that defendant Stillwell is entitled – for the reasons stated above as well as for other reasons set forth below and to be set forth at the re-sentencing proceeding – to a sentencing variance in consideration of the factors contained in 18 U.S.C. § 3553(a).

III.

Defendant Stillwell's life sentence was extraordinary for what it represented. Mr. Stillwell has never disputed his culpability in the murder. Indeed, he gave a post-arrest statement to that effect, which was offered into evidence against him at trial. His only contention from the outset following his arrest was to challenge the jurisdictional basis of the principal charge against him. And, his only way of doing so was to proceed eventually to trial and on appeal. Thus, in short, he simply exercised his constitutional right to a jury trial. Because he did so and in so doing put the Government to its burden of proof at trial, he received at his first sentencing a mandatory term of life imprisonment.

That trial penalty would have been enough to crush the spirits of most inmates. Not so for Mr. Stillwell. Instead, over the past seven (7) years, he has compiled an extraordinary record of rehabilitation. That record includes sterling prison conduct, demonstrated by exemplary participation in and occupying leadership/mentoring roles with numerous Bureau of Prisons (BOP)/nonprofit organization inmate programs. Documents attached hereto as Exhibit B are testimony to Mr. Stillwell's good works, persistence, diligence, character and abilities in transitioning towards rehabilitation and a productive life upon eventual release from prison. These circumstances – as well his serious, worsening and chronic medical condition with diabetes – lead Mr. Stillwell to seek

a substantial sentencing reduction under the federal compassionate release statute. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to re-sentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," and the reasons that can justify re-sentencing need not involve only medical, elderly or family circumstances.

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. § 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Back in 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. *Id.*

Congress never defined what constitutes an "extraordinary and compelling reason" for re-sentencing under § 3582(c). However, Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Congress provided only one limitation to that delegation of authority: "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances so that sentencing courts could not use it as a full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to re-sentence people in individual cases. Indeed, the use of the modifier "alone" signifies just the opposite: that rehabilitation could be used in combination with other factors to justify in totality a sentencing reduction.

The Commission initially left it to BOP to fill the void and create the standards for extraordinary and compelling reasons warranting re-sentencing under § 3582(c)(1)(A). The Commission finally acted in 2007, promulgating a policy that extraordinary and compelling reasons include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, application note 1(A). After a negative DOJ Inspector General report found that the BOP had rarely moved courts for a § 3582(c)(1)(A) modification even for prisoners who met the objective criteria, *see* U.S.

Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (Apr. 2013) ("FBOP Compassionate Release Program"), the Commission amended its policy statement, expanding the guidance to courts on qualifying conditions and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G. § 1B1.13. *Id.* at application note 4; *see also United States v. Dimasi*, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to new "encouraging" guidelines).

The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant," including terminal illness and other serious medical conditions and impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) "Family Circumstances," where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) "Other Reasons," when the Director of the BOP determines there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, application note 1(A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, application note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

Consistent with the text and legislative history of § 3582(c), the Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for re-sentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for re-sentencing relief under § 3582(c), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. *See* P.L. 98-473 (H.R.J. Res. 648), P.L. 98-473, 98 Stat. 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id.* So even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process

meant that, practically speaking, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to act upon.

Leaving the BOP Director with ultimate authority for triggering and setting the criteria for sentence reductions under § 3582(c)(1)(A) created several problems. The Office of the Inspector General (OIG) found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set timelines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. *See FBOP Compassionate Release Program*, at i—iv. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; *see generally* Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18 U.S.C. § 3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration*, 21 FED. SENT. RPTR. 167 (Feb. 2009).

Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now re-sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once the defendant who has properly exhausted files a motion, a court may, after considering the 18 U.S.C. § 3553(a) factors, re-sentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.* Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The effect of these new changes is to allow federal judges the ability to rule on a prisoner's compassionate release application even in the face of BOP opposition, its failure to respond to a prisoner's request for compassionate release in a timely manner or simple inaction.

Federal judges now have the power to order reductions of sentences, with the judiciary taking on the role as the essential adjudicator of compassionate release requests based upon the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

Ordinarily, a prisoner is expected to properly pursue and exhaust his administrative remedy first with BOP. However, it is becoming increasing apparent that BOP inaction allows prisoners pre-emptively to invoke the First Step Act so long as the

Government agrees to waive the administrative exhaustion requirement – which we ask the U.S. Attorney's Office to do here. *Cf. United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) ("[A]bsent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities."). If so waived, on application by the defendant for compassionate release, the sentencing court then possesses authority to reduce a sentence if and whenever it finds "extraordinary and compelling reasons warrant such a reduction." A court must consider the 18 U.S.C. § 3553(a) sentencing factors in reducing any sentence, and any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). *See generally United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021). With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, the Sentencing Guidelines' commentary and application notes to the contrary notwithstanding, a prior determination by BOP is no longer required or binding on courts. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Simply put, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Defendant Stillwell presents this Court with "extraordinary and compelling reasons" for reducing his sentence and in that regard there are at least three reasons for doing so. First, he received an unusually long sentence for a first offender – even in a murder case. Second, his life sentence was due in no small part to a trial penalty for the exercise of a fundamental constitutional right necessary in order to challenge the jurisdictional element of the principal offense charged. And third, Mr. Stillwell has a remarkable record of rehabilitation showing that, upon release, he is no longer any danger to the public. There are additional reasons why Mr. Stillwell's sentence presents extraordinary circumstances. He has now served over seven (7) years of imprisonment, and his existing sentence is grossly disproportionate to what other defendants who participated in the same conspiracy to commit murder in a foreign country received given his ancillary role in the offense – another extraordinary and compelling reason. His remarkable record of rehabilitation adds to the determination that he presents extraordinary and compelling reasons in support of a sentencing reduction. And, his medical history with diabetes while incarcerated from the time of his arrest until the present, is indicative

of an increasingly debilitating and chronic condition – with which this Court is intimately familiar.

Conclusion

For all of the foregoing reasons, defendant Carl David Stillwell is entitled in this case upon re-sentencing to a sentence constituting "just punishment" and "not greater than necessary" to comply with this Court's sentencing mandate. We respectfully submit that a substantial sentencing reduction is warranted consistent with the provisions of the First Step Act, the Guidelines and the relevant sentencing statutes. That sentence should be – in order of magnitude – substantially less than the otherwise applicable guideline range of 292-365 months, even with a downward role in the offense adjustment. Otherwise, just as at least one juror recognized at the conclusion of the trial in this case, an "incredibly unjust" result will obtain.

Respectfully submitted,

*/s/ Robert W. Ray*

Robert W. Ray

RWR:mzg

cc: Rebekah A. Donaleski, AUSA (via e-mail and ECF)

4854-0180-3062, v. 1

# EXHIBIT A

LESLIE GARRETT
PO Box 20215, New York, NY 10011

August 20, 2018

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

*RE: Case # 1:13-cr-00521*

Dear Judge Abrahms,

It is with great embarrassment that I have realized I made a terrible typo in my original letter to you of August 4th. The first paragraph should have read as follows:

> I am writing to encourage you to consider omitting the mandatory minimum sentence when you deliver your sentence in the case of US GOVT vs. Joseph Manuel Hunter, Adam Samia and Carl David Stillwell. In fact, I hope you give them the absolute lowest sentence you can stand to. If these men, especially Samia and Stillwell, serve more time than Paul le Roux then there is something incredibly unjust in our Judicial System.

I assume this was obvious to all who received the letter but wanted to clarify my intended sentiment.

Sincerely,

Leslie Garrett

Leslie Garrett

So Embarrassing!
At least 20 people read my letter and overlooked the glaring mistake.
Best, Leslie

Leslie Garrett
PO Box 20215
New York, NY 10011

NEW YORK
NY 100

PM 15 L




RECEIVED BY

AUG 22 2018

THOMPSON & KNIGHT LLP

Robert William Ray
Brittney Melissa Edwards
Thompson & Knight, LLP
900 Third Ave
New York, NY 10022-3915

10022-488320

USA v. Hunter, et al

13 Cr. 521

# Jurors

1)
2)
3)
4)
5)
6)
7)
8)
9)
10) Leslie E. Garrett
11)
12)
13)
14)

# EXHIBIT B



# Spiritual Guide Award

Spiritual Group Christian A

*Cohort 27*

Carl Stillwell

Tuesday, December 14, 2021

[signature]

Pastor McFarland, General Christian Spiritual Guide



# LIFE CONNECTIONS PROGRAM

# CERTIFICATE OF GRADUATION

This document certifies that

**Carl Stillwell**

has successfully completed this eighteen month, faith-based program at the United States Penitentiary in Terre Haute, Indiana.

**Tuesday, December 14, 2021**

J. Sutter, LCP Chaplain

B. Lammer Acting Complex Warden

# *Certificate of Participation*

This acknowledges that

## Carl Stillwell

Has participated in the following courses during the senior semester

At Life Connections Program USP Terre Haute:

Conflict Management

Following Your Moral Compass

Family Life Connections

Leadership

Transitional Issues

Staying on Track

Senior Addiction Recovery

Senior Seminar

July 2021-December 2021

J. Sutter
LCP Chaplain

# CERTIFICATE OF PARTICIPATION

## Basic Bible Reading: Dr. McFarland

# Carl David Stillwell

*A Life Connections Program Elective class (2 Hours)*

**Life Connections Program USP Terre Haute, IN**

Mr. C. Wilson, LCP Assistant

July 7, 2021

# *Certificate of Participation*

This acknowledges that

## Carl Stillwell

Has participated in the following courses during the middle semester

At Life Connections Program USP Terre Haute:

Spirituality

Religious Tolerance

Obligation to Right the Wrong

Managing Emotions

Just Thinking

December 2020-June 2021

J. Sutter
LCP Chaplain


Word of the Day Honors
CONGRATULATIONS
Carl Stillwell
On 05-13-2021 you gave a
Life Connections Program Word of the Day Presentation
worthy of honors (a score of 95 or above), thank you.
J. SUTTER, LCP CHAPLAIN
LCP FACILITATOR

# CERTIFICATE OF COMPLETION

Awarded to

**Carl Stillwell**

upon completion of 500 hours of community service
while a student of the Life Connections Program
at the United States Penitentiary in Terre Haute, IN.

Chaplain J. Sutter
Life Connections Program Chaplain

# CERTIFICATE OF COMPLETION

Awarded to

## Carl Stillwell

upon completion of 500 hours of community service
while a student of the Life Connections Program
at the United States Penitentiary in Terre Haute, IN.

Chaplain J. Sutter
Life Connections Program Chaplain

# CERTIFICATE OF PARTICIPATION

Presented to

## Carl Stillwell

Upon successful completion of

## Total Money Makeover

a 12 hour self-study elective course
through the Life Connections Program
at USP Terre Haute

Summer 2020

Date

LCP Electives Coordinator

# CERTIFICATE OF PARTICIPATION

*Carl Stillwell*

## Life Connections Program

### Shakespeare Seminar

March 29, 2020

Mr. C. Wilson, LCP Assistant




Certificate of Participation

**Public Speaking Seminar**

Cohort 27

**Carl Stillwell**

March 29, 2020

Mr. Wilson LCP Assistant

# CERTIFICATE OF PARTICIPATION

*NUTRITION*

## Carl Stillwell

*An Elective Component for LCP Graduation (12 Hours)*

**Life Connections Program USP Terre Haute, IN**

C. Wilson, LCP Assistant

March 29, 2020

# Certificate of Completion

*The Impact of Crime on Victims*

## Carl Stillwell

*A Victim Impact Component for LCP Graduation (16 Hours)*

**Life Connections Program USP Terre Haute, IN**

2-28-20

Mr. C. Wilson, LCP Assistant

February 24-28, 2020

# PINK LION FINANCIAL

This certifies that

# CARL STILLWELL

Has completed 15 hours of financial bootcamp.

Alyssa Arnett
Owner

February 12, 2020
Date of Graduation


CERTIFICATE of ACHIEVEMENT
IS PRESENTED TO
Carl David Stillwell
FOR ACADEMIC EXCELLENCE IN THE
Systematic Theology Class
Quarter One: Theology Proper
APRIL, 12
2019
PRESENTED BY Tim Paige, B.Th

**LIFE CONNECTIONS PROGRAM**
United States Penitentiary, Terre Haute

Final Transcript
Date: December 14, 2021

Name: Carl Stillwell  Registration Number: 30983-057  **Current Cohort:** 27  **Original Cohort:** 27
**Spiritual Guide:** Pastor Bechtel & Pastor McFarland  **Program Start Date:** 11/5/2019  **Program End Date:** 12/14/2021
**Program Mentor:** Michael Ray  **Post incarceration Mentor:** Bill Rudder  **Program Status:** Complete

| Work Books | Score | Other Courses/Workbooks | Score | Seminars | Date | Independent Learning | Hours |
|---|---|---|---|---|---|---|---|
| Orientation | Pass | Calendar | Pass | Welcome to LCP | 11/7/2019 | Electives: (72 Hours required) | |
| Comfort Zone | Pass | Goal Setting | Pass | Comfort Zone Retreat | 12/19/2019 | LCP Total Money Makeover | 12 |
| Building Blocks to a Healthy Community | Pass | Daily Journaling 1 | Pass | Community Building | 1/30/2020 | LCP Nutrition | 12 |
| Preparing For the Journey | Pass | Daily Journaling 2 | Pass | Listen & Learn: Victim Impact | 2/28/2020 | LCP Public Speaking | 12 |
| Faith Specific Grounding | Pass | Daily Journaling 3 | Pass | Financial Planning | 2/12/2020 | LCP Shakespeare | 12 |
| Spirituality | pass | Addiction Recovery 1 | N/A | Interfaith Cooperation | N/A | LCP Basic Bible Study | 2 |
| Religious Tolerance | pass | Addiction Recovery 2 | N/A | Intensive Journaling 1 | 8/8/2019 | ACE Industrial Revolution | 6 |
| Obligation To Right the Wrong | pass | Senior Addiction Recovery | Pass | Intensive Journaling 2 | N/A | Assorted ACE Courses | 54 |
| Managing Emotions | pass | Truthought: Tackling the Tactics | pass | Victim Panel | N/A | | |
| Conflict Management | Pass + | Truthought: Just Thinking | Pass | Offender Workforce Dev | N/A | Total | 104 |
| Following Your Moral Compass | Pass+ | Truthought: Staying on Track | Pass | Senior Seminar | 12/13/2021 | **Wellness Habit Development:** (6 units required) | |
| Family Life | Pass+ | Inside Out Dads | N/A | | | 1. Pass | 4. Pass |
| Leadership | Pass | Computer Skills | N/A | | | 2.Pass | 5.Pass |
| Transitional Issues | Pass | | | | | 3. Pass | 6.Pass |

Re-entry Preparation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Resume & Interviewing Class | N/A | Re-entry Simulation | N/A | Resource Packet | 12/12/2021 | Re-entry Budget | 12/12/2021 |
| Resume & Cover Letter | N/A | Mock Job Fair | 11/29/2021 | Job search | N/A | Re-entry Goals | 12/12/2021 |
| Elevator Speech | N/A | Continuing Ed Plan | 12/12/2021 | Outside Mentor | Bill Rudder | Contact Outside Mentor | 12/12/2021 |

| Essays | | Victim Impact Essays | | Community Service | Word of the Day | Score* | Date |
|---|---|---|---|---|---|---|---|
| Spiritual Analysis (4) | 12/12/2021 | Victim List | 8/1/21 | Total Hours | Honor | 88 | 1/7/2021 |
| Moral Compass (2) | 12/12/2021 | 500 word Impact Statement | 8/1/21 | 628.5 | Country | 98* | 5/13/2021 |
| Mentor Essay | 12/12/2021 | Plan for making amends | 8/1/21 | (500 Required) | Commitment | 92 | 10/27/2021 |

*denotes Honors WOD

| Program Completion Verified; Chaplain J. Sutter | | DATE: 12/14/2021 |
|---|---|---|

*United States Penitentiary Terre Haute*

## *Life Connections Program*

**04/28/2020**

**Life Connections Program Graduate Assistant**

Position Description

Position:

The Graduate Assistant is a voluntary position. Through his behavior the Graduate Assistant will provide an example to the current participants. He will consistently demonstrate the LCP values of honesty, responsibility, caring, open-mindedness, willingness and humility.

Each Graduate Assistant is assigned to a cohort. The assistant will make himself available to all members of the assigned cohort for questions or guidance.

Graduate Assistant positions are filled by invitation only.

Duties:

- Provide a contact person for assigned cohort members for questions relating to LCP requirements, handbook, expectations, procedures, etc.
- Meet at least once with each cohort member to ensure proper understanding of handbook
- Check in regularly with cohort members regarding needs, concerns, and/or questions
- Encourage struggling members of the assigned cohort
- Assist with seminars & cohort specific presentations as needed
- Facilitate weekly journaling sessions
- Provide leadership for one community committee
- Ensure proper cleanliness of unit
- Meet monthly with LCP Chaplain to provide report & ideas

# *Certificate of Appreciation*

Many thanks to

# Carl Stillwell

for your service to the Life Connections Community as Big Brother to members of cohort 30.
Dates of service: January 2022-July 2022

7-14-22

J. SUTTER, LCP CHAPLAIN
Life Connections Program
USP Terre Haute

JULY 14, 2022

# CERTIFICATE OF BAPTISM

THIS CERTIFIES THAT CARL STILLWELL WAS BAPTIZED IN THE NAME OF THE FATHER, AND OF THE SON, AND OF THE HOLY GHOST

ON THE 4TH DAY OF SEPTEMBER, 2022 AT USP TERRE HAUTE

BY CHAPLAIN J. BARLOW


LIFE CONNECTIONS PROGRAM
USP TERRE HAUTE
Hurt, Grief, & Forgiveness
With Azim Khamisa
Cohort 27
Carl Stillwell
August 16, 2022
Chaplain Sutter