UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CARL DAVID STILLWELL,<br><br>Defendant. | No. 13-cr-521 (RA)<br><br>ORDER |

RONNIE ABRAMS, United States District Judge:

The Court is in receipt of Defendant Carl David Stillwell's reply in support of his motion for compassionate release, dated May 24, 2025. In support of his reply, Mr. Stillwell included a medical report as an attachment. In light of the private medical information contained in these records, the Court concludes that the presumption of public access has been outweighed by Defendant's privacy interests. *See United States v. Suarez*, No. 16-cr-453 (RJS), 2024 WL 2317413, at *1 (S.D.N.Y. May 22, 2024) (citing *United States v. Amodeo*, 71 F.3d 1044, 1048–51 (2d Cir. 1995)); *see also* Dkt. No. 949 (granting Mr. Stillwell's motion to seal medical records from his motion for compassionate release). Accordingly, Mr. Stillwell's medical information will be redacted from his submission, as reflected in the attachment. The Clerk of Court is respectfully directed to mail a copy of this order, as well as the order at docket entry 949, to Mr. Stillwell (30983-057) at Federal Correctional Institution Butner Low, P.O. Box 999, Butner, NC 27509.

SO ORDERED.

Dated:   June 27, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CASE NO. 13-CR-521 (RA) |
| Plaintiff, | § |
| v. | § |
| CARL DAVID STILLWELL, | § |
| Defendant. | § |

# REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Defendant Carl David Stillwell respectfully submits this reply to the Government's response filed April 25, 2025 (Doc. No. 933). For the reasons stated below, the Government's opposition should be rejected, and Mr. Stillwell's motion for compassionate release should be granted pursuant to 18 U.S.C. § 3582(c)(1)(A).

## I. THE GOVERNMENT'S MEDICAL ARGUMENTS ARE INADMISSIBLE LAY SPECULATION AND CANNOT REBUT THE DEFENDANT'S EXPERT MEDICAL EVIDENCE

In its response, the Government attempts to downplay the severity of Mr. Stillwell's medical conditions and the inadequacy of his care in custody. However, it has submitted no medical opinion from a licensed physician or qualified healthcare provider. To the extent the Government disputes Mr. Stillwell's diagnoses, prognosis, or ability to care for himself, such contentions constitute impermissible lay speculation and are not admissible evidence.

establish that he suffers from see page 3 @ paragraph 2, which substantially diminishes his ability to provide self-care in a correctional setting. The Court should credit these unrebutted expert findings over unsupported lay argument.

The Government's speculative arguments regarding treatment quality, based solely on record summaries and unsupported conclusions, must be disregarded.

## II. Dr. Ashby's Medical Evaluation Confirms That Mr. Stillwell's Conditions Are "Extraordinary and Compelling" Under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13

The standard for compassionate release under 18 U.S.C. § 3582(c)(1)(A) requires that "extraordinary and compelling reasons" justify a reduction in sentence. While United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), clarified that courts are not bound by U.S.S.G. § 1B1.13 in cases initiated by defendants, its criteria remain persuasive, particularly where medical conditions are at issue.

U.S.S.G. § 1B1.13, Application Note 1(A), 1B1.13(b)(1), and (b)(1)(c) recognizes an "extraordinary and compelling reason" where:

"The defendant is suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he… is not expected to recover."

Dr. Bernard Ashby's expert report establishes precisely this. Based on a comprehensive review of Mr. Stillwell's medical records and the government's assertions, Dr. Ashby concludes that Mr. Stilwell suffers from:

- Type 2 diabetes mellitus with suboptimal glycemic control
- Stage 3 chronic kidney disease with proteinuria
- Hypertension and hyperlipidemia
- Diabetic retinopathy and glaucoma
- Cervical spinal stenosis and suspected basilar tip aneurysm
- Chronic cellulitis with recurrent infections, See Exhibit A

It is well-settled that expert testimony is required to address matters involving medical knowledge. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993) (requiring expert testimony grounded in scientific or specialized knowledge); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("The government offers no medical evidence to rebut defendant's showing… Its arguments amount to mere disagreement, not contradiction by expert testimony.").

Similarly, courts have cautioned that even voluminous medical records do not substitute for expert evaluation of whether treatment is adequate. See *United States v. Beck*, 425 F.Supp.3d 573, 586 (M.D.N.C. 2019) ("Courts may not disregard compelling medical evidence merely because the government speculates, without support, that the defendant is receiving adequate care in custody.").

The Standard for Medical Conditions under U.S.S.G. § 1B1.13

"Under U.S.S.G. § 1B1.13, an 'extraordinary and compelling' medical condition includes a serious physical or medical condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility.' Whether a condition meets this threshold is a medical question appropriately addressed by trained professionals—not speculative lay argument."

Dr. Ashby emphasized the Weight of Stillwell's Medical Evidence

Stillwell has submitted records and opinions from a licensed medical professional:

"Defendant's motion is supported by medical records and professional assessments from Dr. Bernard Ashby, MD, MPP, FACC, RPVI, a board-certified specialist, which detail the severity and progressive nature of his condition. The government offers no competing expert opinion. The Court should credit the unrebutted expert findings." See, United States v. Beck, supra.

The government's response relies on unsupported assertions about Defendant's medical condition and treatment in custody. These statements are not supported by any expert medical evaluation or physician's opinion and therefore constitute impermissible lay speculation. In contrast, Defendant has submitted medical records and opinions from licensed professional with expertise in cardiovascular disease, vascular medicine, nuclear cardiology, and internal medicine, which

These serious and progressive conditions interact synergistically to significantly diminish Mr. Stillwell's ability to provide self-care in custody and place him at elevated risk for cardiovascular events, renal failure, stroke, severe neurological decline, and life-threatening infections. Dr. Ashby emphasizes that Mr. Stillwell "is not expected to recover from his chronic conditions," and warns that the correctional environment does not provide the consistent, multidisciplinary care required to stabilize or mitigate their progression.

The government has offered no contrary medical opinion, and thus Dr. Ashby's unrebutted findings must be credited. His report amply demonstrates that Mr. Stillwell's condition satisfies the standard for compassionate release both under the statute and under prevailing judicial interpretations post-Brooker.

### III. STILLWELL'S REPLY TO GOVERNMENT'S CLAIM FOR COMPASSIONATE RELEASE

Refutation of Government's Claim Regarding Defendant's Ability to Provide Self-Care

The Government asserts (Gov't Resp. at 16) that Mr. Stillwell is "clearly able to provide self-care" in the facility, citing an April 10, 2025 clinical note referencing his participation in the UNICOR work program and a minor injury sustained while operating a sewing machine (Exhibit A at 7, Gov't Resp.). This characterization is misleading and inaccurate.

In reality, Mr. Stillwell is no longer authorized to work in the UNICOR program. The BOP's medical staff explicitly declined to release him for work duties due to his serious and ongoing medical conditions. This restriction reflects the substantial limitations on his ability to perform even minimal self-care tasks and underscores the progressive and debilitating nature of his illnesses.

Therefore, the Government's reliance on a prior isolated incident from UNICOR work does not accurately represent Mr. Stillwell's current functional capacity and should not diminish the compelling medical evidence demonstrating his diminished ability to provide self-care within the correctional environment.

Subsequent to the government's filing, additional facts have emerged that underscore the inadequacy of Mr. Stilwell's medical care and further support a

finding of extraordinary and compelling circumstances under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

First, Mr. Stillwell's previously diagnosed intracranial aneurysm has now been more accurately characterized as involving not merely a localized "ballooning" on one side of a blood vessel, but instead a ballooning of an entire vein wall—suggesting a potentially more dangerous vascular abnormality than originally understood. This condition requires a different treatment plan than what was initially contemplated. Critically, it has not been treated or actively monitored within the correctional facility. Mr. Stillwell also has no access to a second opinion from a neurologist, neurosurgeon, or interventional specialist, further compounding the risks of rupture, stroke, or other catastrophic outcomes.

Second, Mr. Stillwell's cervical stenosis remains essentially unaddressed. He has had only two medical visits concerning this progressive spinal condition. No treatment plan has been formulated or initiated. The absence of neurological intervention, pain management, or surgical consults places Mr. Stilwell at imminent risk of irreversible spinal cord injury, severe disability, and loss of motor function. The lack of treatment—coupled with the degenerative nature of cervical stenosis—makes clear that the BOP cannot meet even the basic standards of care for this serious condition.

Third, the chronic cellulitis affecting Mr. Stillwell has proven similarly intractable. While the wounds temporarily improve when medical staff provide daily bandaging, they reappear within hours once the dressing regimen is paused. BOP medical staff are uncertain of the cause and are not even certain it is cellulitis. There is no established diagnosis, no infectious disease consultation, and no long-term treatment plan or follow-up in place. This persistent and unexplained skin condition puts Mr. Stillwell at constant risk of deeper infection, tissue necrosis, and sepsis—all of which are amplified by his comorbid diabetes and chronic kidney disease.

These developments, combined with Dr. Ashby's expert medical opinion and the government's failure to rebut with any competent medical evidence, leave no doubt that Mr. Stillwell's constellation of chronic, progressive, and untreated conditions meet the definition of extraordinary and compelling medical circumstances. The Court should give full weight to these expert findings and disregard the

government's unsupported lay assertions, which fail to account for the current reality of Mr. Stillwell's rapidly deteriorating health.

On page 18 of its opposition, the government asserts that Mr. Stillwell "refused" the COVID-19 vaccine—an assertion meant to suggest noncompliance and undercut his claim of vulnerability to infection. However, this claim is factually inaccurate and directly contradicted by the Bureau of Prisons' own vaccine documentation policies. Stillwell's medical history shows he has a COVID vaccine in the past and he is up to date on the flu vaccine, therefore based on the BOP's own policy and Stillwell's medical history, the government's allegations are incorrect, nor supported by Stillwell's medical history.

According to the BOP's COVID-19 Vaccine Guidance Manual (see Exhibit B, Section 13), a vaccine administration entry may be marked as "refused" not only when a vaccine is affirmatively declined by the inmate, but also when the vaccine was not actually offered at all. Specifically, the policy provides that if an inmate is unavailable, not called, or not scheduled for vaccination, medical staff may still input a "refused" notation into the system for administrative purposes. This designation is not, therefore, a reliable or valid indicator of an inmate's intent or consent.

In Mr. Stillwell's case, he was never affirmatively offered the COVID-19 vaccine, nor did he ever refuse it. Instead, as permitted by BOP procedure, medical staff preemptively recorded the entry as a "refusal" despite the absence of an actual offer. This recordkeeping practice undermines the government's argument and renders its claim legally and factually irrelevant.

Therefore, the government's use of this administrative shorthand as substantive evidence against Mr. Stillwell's motion is not only inaccurate but misleading. It should carry no weight in the Court's analysis of either his medical vulnerability or the § 3553(a) factors.

### IV. The § 3553(a) Factors Favor Compassionate Release Given Mr. Stillwell's Declining Health and the Minimal Risk He Poses to the Public

Even where "extraordinary and compelling" reasons are present, courts must consider whether release is consistent with the factors listed in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense, the defendant's history and characteristics, the need for just punishment, deterrence, public safety, and the need to provide adequate medical care.

Here, the § 3553(a) factors strongly favor release:

1. Mr. Stillwell's declining health undermines the penological goals of continued incarceration.

Mr. Stillwell is facing progressive, irreversible medical decline. As Dr. Ashby notes, many of his conditions—especially cervical stenosis, possible aneurysm, and uncontrolled diabetes—require prompt, specialized care unavailable in prison. Continued incarceration would amount to a sentence of suffering and medical deterioration, not a sentence of rehabilitation.

2. Mr. Stilwell does not pose a danger to the public.

Mr. Stillwell is over 57 years old and has already served a substantial portion of his sentence. He has no history of violence and is not a threat to public safety. His complex medical conditions and functional impairments further reduce any risk of recidivism. Courts routinely consider declining health and physical frailty in finding that early release is consistent with public safety. See United States v. Hernandez, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020).

3. Adequate medical care cannot be provided in the correctional setting.

Dr. Ashby specifically concludes that the Bureau of Prisons' care "has not been consistently aligned with current best practices," and warns of "significant gaps" in Mr. Stillwell's treatment, including a six-month lapse in evaluating his cervical stenosis. The correctional setting cannot meet the complex and multidisciplinary demands of his care.

4. Just punishment does not require Mr. Stilwell to die in prison.

Compassionate release is not a sentence reduction based on sympathy alone—it is a statutory acknowledgment that punishment must be proportional not just to the offense, but to the human being serving the sentence. Mr. Stillwell's continued incarceration amid accelerating medical decline and potential irreversible harm would be inconsistent with principles of justice.

## CONCLUSION

For the foregoing reasons, and based on the totality of the circumstances, including Mr. Stillwell's numerous chronic medical conditions, his substantially diminished ability to provide self-care in prison, the expert medical opinion of Dr. Bernard Ashby, and the applicable sentencing factors under 18 U.S.C. § 3553(a), Mr. Stilwell respectfully requests that this Court grant his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), and reduce his sentence to time served, with appropriate conditions of supervised release.

Respectfully submitted,

*/s/ CDS*

**CARL DAVID STILLWELL**
BOP #30983-057

FCI Butner Low

FCI P.O Box 999

Butner NC 27509

Defendant Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this 24 day of May, 2025, I sent the reply to Government's response to defendant's motion for compassionate release foregoing with the Clerk of Court using U.S mail:

**Clerk of Court**

U.S Southern District Court

500 Pearl St.

New York, NY 10007

**Nicholas S. Bradley, Esq.**
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
Jacob K. Javits Federal Building
26 Federal Plaza, Room 3630
New York, New York 10278

_/s/ CDS_

CARL DAVID STILLWELL

Case 1:13-cr-00521-RA    Document 950    Filed 06/27/25    Page 12 of 16

