UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL DAVID STILLWELL,<br><br>Defendant. | No. 13-CR-521 (RA)<br><br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

On April 18, 2018, Defendant Carl David Stillwell was convicted of murder-for-hire and related crimes for his participation in the death of Catherine Lee. By letter dated March 29, 2025, Stillwell moved *pro se* for compassionate release. Dkt. 926 ("Pet'r's Mot."). The Government filed an opposition, Dkt. 933 ("Gov. Opp'n"), to which Stillwell replied. Dkt. 950 ("Pet'r's Repl."). Stillwell argues that his medical circumstances, his efforts at rehabilitation, and the unlikelihood that he will recidivate make him an ideal candidate for compassionate release. Pet'r's Mot. 6–7. The Government disagrees. Gov. Opp'n 8–9. For the reasons that follow, the Court denies Stillwell's motion.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this matter, and sets forth only that necessary for the instant Memorandum Opinion and Order. On April 18, 2018, Stillwell, along with his co-defendants Adam Samia and Joseph Manuel Hunter, were each convicted of murder-for-hire and related crimes for their participation in a conspiracy resulting in the death of Catherine Lee. Hunter, who ran the mercenary teams of Paul LeRoux's transnational criminal organization, recruited Samia and Stillwell in 2011 to be the "kill team" for

four intended murders in the Philippines.  Dkt. 615 ("PSR") ¶¶ 16–59.

Samia and Stillwell met with Lee, who was a real estate agent, in the Philippines on February 12, 2012, under the auspices of a potential real estate purchase.  PSR ¶ 45–47.  That day, while Stillwell drove the group, Samia shot Lee twice in the head, after which Stillwell and Samia dumped her body in a vacant lot outside of Manilla.  *Id.*  Stillwell was paid $35,000 for his role in Lee's murder.  PSR ¶¶ 49–50.  The group had planned to kill three more intended victims, but failed to do so.  Dkt. 652 ("2018 Sentencing Tr."), at 10.

After conviction on all counts at trial, on October 12, 2018, the Court sentenced Stillwell to the then-mandatory term of life imprisonment.  2018 Sentencing Tr. at 10.  On April 20, 2022, the Second Circuit affirmed Stillwell's conviction.  *United States v. Hunter*, 32 F. 4th 22, 38 (2d Cir. 2022), *aff'd sub nom. Samia v. United States*, 599 U.S. 635 (2023).  By summary order, however, the Second Circuit vacated the defendants' convictions on certain counts in light of the Supreme Court's intervening ruling in *United States v. Davis*, 588 U.S. 445 (2019), and remanded the case to this Court for resentencing.  *United States v. Hunter*, 2022 WL 1166623, at *8 (2d Cir. Apr. 20, 2022).   On October 21, 2022, the Court resentenced Stillwell to 240 months' imprisonment.  Dkt. 836 ("2022 Resentencing Tr.") at 46.

By letter dated March 29, 2025, Stillwell moved for compassionate release.  Pet'r's Mot at 1.  In his motion, he lays out several grounds for compassionate release, including his medical conditions, his efforts at rehabilitation and the unlikelihood that he will recidivate. *Id.* at 6–7.

First, Stillwell presents an extensive list of diagnosed medical conditions, including type II diabetes, stage three chronic kidney disease, high blood pressure, cervical stenosis, aneurysm, gout, anemia, glaucoma and cellulitis. Pet'r's Mot., Ex. B, at 2. He argues that these conditions will result in "premature mortality," that they are inadequately managed by the Bureau of Prisons

("BOP"), and that they limit his ability to self-care. Pet'r's Mot. at 8–9.

Stillwell supports his claims with a report from Dr. Bernard Ashby, a vascular cardiologist. *Id.* Ex. B. Dr. Ashby concludes that that Stillwell has serious medical conditions that substantially diminish his ability to provide self-care within the correctional facility and from which he will not recover. *Id.* at 4–5. Dr. Ashby's report further states that the "cumulative burden of these multiple and complex medical illnesses undeniably diminishes Stillwell's overall life expectancy." *Id.* at 5. Dr. Ashby expresses "deep concern[]" that such conditions are being inadequately managed by the BOP, and suggests that without "advanced, expert-level, multidisciplinary care," incarceration will result in "premature mortality." *Id.*

The Government disputes that assessment. It contends that Stillwell's conditions are being adequately managed by the BOP, pointing to regular interactions with and services provided by medical staff, including outside evaluations to address certain conditions, daily wound dressings, biologic medications to address chronic health conditions, and regular consultations. Gov. Opp'n at 17–18. On this basis, the Government argues, Stillwell's medical needs and health conditions do not provide justification for compassionate release. *Id.*

Second, with respect to his rehabilitation, Stillwell highlights his completion of certain educational courses and participation in prison programs, as well as his lack of disciplinary infractions. Pet'r's Mot. at 16–17. He also states that he is unlikely to recidivate given his age— Stillwell is fifty-seven years old—and his lack of prior offenses. The Government argues that Stillwell's rehabilitation also does not justify his compassionate release, because rehabilitation alone cannot justify such relief. Gov. Opp'n at 13–14.

## LEGAL STANDARD

A court may grant compassionate release if (1) a defendant has exhausted all administrative

remedies with the BOP, [1]  (2) "extraordinary and compelling reasons warrant such a reduction," (3) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (4) the reduction is supported by the factors set forth in 18 USC § 3553(a), to the extent they apply. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (recognizing that both "extraordinary and compelling reasons" and satisfaction of the Section 3553(a) factors are necessary to grant compassionate release). Additionally, "[t]he defendant bears the burden of proving that he is entitled to compassionate release." *United States v. Saez*, 2024 WL 303847, at *2 (S.D.N.Y. Jan. 26, 2024).[2]

Following the November 2023 amendments to the Sentencing Guidelines, Section 1B1.13 provides Sentencing Commission policy for what constitutes "extraordinary and compelling reasons" justifying compassionate release. *United States v. Cheng*, 2025 WL 573767, at *2 (S.D.N.Y. Feb. 21, 2025) (citing *United States v. Corbett*, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023)).  These include "the defendant's medical circumstances, his age, his family circumstances and abuse he suffered at the hands of prison officials." *Id.*; *see also* U.S.S.G. § 1B1.13.  A court may also consider "[o]ther [r]easons" that are "similar in gravity" to the four enumerated reasons under the Section's catchall provision.  U.S.S.G. § 1B1.13(b)(5).

With respect to medical conditions, the Sentencing Commission has identified specific classes of medical circumstances which are "extraordinary and compelling."  As relevant here, these include (1) a "terminal illness," (2) a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (3) a "medical

---

[1] It is undisputed that Stillwell has exhausted his administrative remedies.  *See* Gov. Opp'n at 8.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1).

Because Stillwell is proceeding *pro se*, the Court will review his submissions with "special solicitude" and will construe them "liberally" and interpret them "to raise the strongest arguments that they suggest." *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

## DISCUSSION

For the reasons that follow, the Court finds that Stillwell has failed to demonstrate the extraordinary and compelling reasons necessary to justify his release, and that the Section 3553(a) factors do not justify a reduction in his sentence. It thus denies Stillwell's petition.

### A. Extraordinary and Compelling Reasons

Stillwell argues that there are three extraordinary and compelling reasons to grant compassionate release due to (i) his medical circumstances, (ii) his rehabilitation efforts and the unlikelihood he will recidivate and (iii) Section 1B1.13's catchall provision. None are persuasive.

### 1. Medical Circumstances

The Court begins with Stillwell's medical conditions, which are the primary focus of his petition. Although Stillwell undoubtedly suffers from various medical conditions, he has not demonstrated that they constitute an extraordinary and compelling circumstance consistent with Sentencing Commission policy.

First, neither Stillwell nor Dr. Ashby indicate that his medical conditions are terminal. *See* U.S.S.G. § 1B1.13(b)(1)(A). Second, Stillwell has not provided persuasive evidence that his medical conditions substantially diminish his ability to self-care. *See id.* § 1B1.13(b)(1)(B). In general, a defendant qualifies where they are "capable of only limited self-care and . . . confined

5

to a bed or chair more than 50% of waking hours." *United States v. Israel*, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020).    Stillwell primarily points to Dr. Ashby's conclusion that his medical conditions "substantially diminish his ability to provide self-care within the correctional facility."  Pet's Mot. Ex. B. at 2.  This conclusory statement, without more, is insufficient to carry Stillwell's burden here. *See, e.g.*, *United States v. Goode*, 2020 WL 58272, at *7 (S.D.N.Y. Jan. 6, 2020) (denying compassionate release for wheelchair-bound defendant, for, among other reasons, the lack of a record establishing defendant's inability to self-care); *United States v. Latney*, 2025 WL 1126474, at *5 (E.D.N.Y. Apr. 16, 2025) (collecting cases).  Indeed, the Government's record provides some indication that Stillwell is able to exercise self-care, for example, by regularly attending medical appointments and using an exercise bike and walking for workouts.  Gov. Opp'n, Ex. A, at 20; *see United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying compassionate release and finding defendant still exercised self-care where he "continue[d] to be independent in his activities of daily living, [and was] able to move around and to see other inmates and to attend medical appointments").

Third, Stillwell's medical conditions appear to be adequately managed by BOP.  *See* U.S.S.G. § 1B1.13(b)(1)(C).  Stillwell lodges a series of complaints about the quality of the medical care he has received, the gravamen of which is that "[t]he ongoing delays, cancellations, and inadequate care within the Bureau of Prisons put [his] life at risk."  Pet'r's Mot., Ex. F ("Stillwell Aff.") ¶ 23.  He primarily alleges that the BOP has not treated his "aneurysm and spinal stenosis," Stillwell Aff. at 71, but his medical records reveal he has had an evaluation for multiple treatment options, an angiogram, and a further consultation for his aneurysm, as well as a recommendation from a doctor that any spinal surgery be delayed until his aneurysm is resolved.

Gov Opp'n, Ex. A., at 11, 426–28, 439, 471–72. He gets new dressings daily to treat recurring leg infections. *Id.* at 2, 12, 26. And he receives regular medical attention for his kidney disease, hypertension, gout, obesity, and diabetic retinopathy. *Id.* at 3, 24, 19–23, 446. Even if Stillwell's medical conditions have worsened since being incarcerated, however, *see* Pet'r's Repl. at 3–4, the record, as supported by the Government's evidence, establishes that he receives regular treatment for his various chronic medical conditions. *See United States v. Saleh*, 2020 WL 3839626, at *5 (S.D.N.Y. July 8, 2020), *aff'd sub nom. United States v. Elgabrowny*, 2022 WL 1701515 (2d Cir. May 27, 2022); *United States v. Amuso*, 2023 WL 5153425, at *3 (E.D.N.Y. Aug. 10, 2023) (denying compassionate release where a petitioner's medical records reflected that the BOP "provid[ed] him with medications, x-rays, and medical appointments upon his request.").

The Court recognizes that Stillwell may require long-term care, and may even receive superior care outside of incarceration—but those facts are insufficient to justify compassionate release. "[T]he decisive question is not whether [Stillwell] would fare better and receive better care if living at home. It is how [Stillwell's] medical conditions measure against the demanding standards set by the Sentencing Commission for when such condition(s) are *extraordinary and compelling*." *United States v. Teman*, 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024) (emphasis in original); *United States v. Radulescu*, 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024) (presence of a health condition requiring long-term or specialized care not an extraordinary and compelling circumstance); *United States v. Rodriguez*, 2023 WL 3001238, at *2 (2d Cir. Apr. 19, 2023) (summary order) (affirming decision to deny compassionate release for a defendant with numerous serious medical conditions because he neither had recent prolonged hospital stays nor a terminal diagnosis and was receiving adequate care from the BOP).

Much like in *Radulescu*, the record reflects that "BOP has provided—and continues to

provide—significant, rather constant, medical care to" Stillwell, including "multiple medical appointments . . . the prescription of various medications, as well as referrals to outside medical specialists for consultations and tests." *Id.* at *2; *see* Stillwell Aff. (noting that Stillwell has had a series of appointments with outside specialists); Gov. Opp'n at 16–18; Gov. Opp'n, Ex. A. Stillwell's litany of complaints about the quality of that care, when contextualized with the Government's recitation of the care he has received and the medical records it has provided, "do[es] not support" a finding "that he requires long-term or specialized medical care that he has been unable to access in custody." *Teman*, 2024 WL 262781, at *8 (collecting cases).

In his reply brief, Stillwell raises several new arguments related to the quality of his care, all of which boil down to a contention that the treatment he has received from the BOP continues to be inadequate. Pet'r's Repl. at 5. He alleges that his aneurysm now requires "a different treatment plan than what was originally contemplated," and that "it has not been treated or actively monitored *within* the correctional facility." *Id.* (emphasis added). As his medical records indicate, however, he has actively engaged *outside* specialists regarding a treatment plan. *E.g.*, Gov. Opp'n, Ex. A, at 426–28. He further alleges that his "cervical stenosis remains essentially unaddressed," Pet'r's Repl. at 5, which, in context with his doctor's note that any spinal surgery wait until his aneurysm is "evaluate[d]," leads the Court to conclude that adequate medical care is being provided. *Id.* at 11.

Stillwell acknowledges that he is being seen by medical staff for these conditions but claims that "treatment plans" have not yet been "formulated" and diagnoses have not yet been definitively "established." *Id.* This does not rise to the level of an extraordinary or compelling circumstance warranting release, or that the care he has been receiving is not "adequate." *See Radulescu*, 2024 WL 4200388, at *2. Given this extensive documentation of his medical care, he

has failed to show that "long-term or specialized medical care . . . is not being provided," U.S.S.G. § 1B1.13(b)(1)(C), or that the BOP cannot render "appropriate care." *Radulescu*, 2024 WL 4200388, at *2.

Finally, the Court considered Stillwell's chronic health conditions at his resentencing on October 21, 2022, 2022 Resentencing Tr. at 45–46, and, for that reason, they largely do not constitute "new information about mitigating circumstances" sufficient to justify a reduction in his sentence. *United States v. Abdou*, 2025 WL 3440597, at *2 (S.D.N.Y. Nov. 26, 2025); *see United States v. Ebbers*, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020); *United States v. Gileno*, 448 F. Supp. 3d 183, 187 (D. Conn. 2020). Though Stillwell's conditions may have worsened, and new conditions may have arisen, since the October 2022 resentencing, they are insufficient grounds for a reduction in his sentence, for the reasons noted above.

For these reasons, Stillwell's medical conditions do not present an extraordinary or compelling reason sufficient to grant relief.

### 2. Unlikelihood of Recidivism and Rehabilitation Efforts

Stillwell's arguments regarding the unlikelihood that he will recidivate and his rehabilitation efforts fare no better. He first argues that, given his age, he is unlikely to recidivate. Pet's Mot. at 18–19. While "[i]t is well-established that the likelihood of recidivism drops sharply with age," *United States v. Johnson*, 754 F. Supp. 3d 305 (E.D.N.Y. 2024), the Court agrees with the Government's argument that age alone does not provide an extraordinary or compelling reason to justify a sentence reduction. *See United States v. Fernandez*, 104 F.4th 420, 427–28 (2d Cir. 2024) (noting that "extraordinary" in this context means "singular" or "beyond or out of the common order"); Gov. Opp'n at 13–14. As Judge Rakoff noted in *United States v. Haney*, if a defendant's "age alone were a sufficient factor to grant compassionate release . . . it follows that

9

every federal inmate in the country" of the same age should be released from detention, "a result that does not remotely comply with the limited scope of compassionate release."  454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020).

Stillwell next argues that he has shown a "commitment to rehabilitation and exemplary institutional conduct" which justifies a sentence reduction.  Pet'r's Mot. at 21.  That commitment is to be commended, but "rehabilitation alone shall not be considered an extraordinary and compelling reason" for compassionate relief.  *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020).  Rehabilitation can support other meritorious grounds for relief, but cannot serve as a standalone, extraordinary and compelling basis to grant relief; after all, "[a] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction."  *United States v. Rodriguez*, 2025 WL 212766, at *5 (S.D.N.Y. Jan. 16, 2025); *see Saleh*, 2020 WL 3839626, at *4.  For these reasons, Stillwell's recidivism risk and rehabilitation do not provide an extraordinary or compelling reason sufficient to grant relief.

### 3.  Catch-All Provision

Finally, Stillwell cites the catch-all provision in the Guidelines—Section 1B1.13(b)(5)— to argue that the "totality of [his] circumstances" constitutes an extraordinary and compelling reason to justify compassionate release.  Pet'r's Mot. at 17–18.  The Court does not agree.  Under Section 1B1.13(b)(5), a district can grant compassionate release when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with" other applicable "extraordinary and compelling" reasons enumerated elsewhere in U.S.S.G. § 1B1.13(b), "are similar in gravity" to those other reasons.  U.S.S.G. § 1B1.13(b)(5). Stillwell has not provided any additional circumstances outside of his medical conditions, efforts to rehabilitate, and the unlikelihood of recidivism as grounds for compassionate relief, all of which

the Court has rejected as neither extraordinary nor compelling. The catch-all provision, therefore, does not provide independent grounds for a reduction in Stillwell's sentence. *See United States v. Sattar*, 467 F. Supp. 3d 152 (S.D.N.Y. 2020) (denying compassionate release, among other reasons, because "although the defendant cites the 'catch-all' provision . . . his application for release is based primarily on his medical conditions and his age . . . [and] makes no separate argument under the 'catch-all' provision").

### B. Section 3553(a)

Even if Stillwell had shown an extraordinary or compelling reason to justify a sentence reduction, the sentencing factors in 18 U.S.C. § 3553(a) weigh against granting such a reduction. *See United States v. Jones,* 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)."). [3]

The nature and circumstances of Stillwell's offense weigh most heavily against him. Although Stillwell characterizes his crimes as "non-violent," Pet'r's Mot. at 21, his own counsel and the Court rightly characterized them in his 2022 resentencing as "heinous." 2022 Resentencing Tr. at 43, 45. Stillwell sought to kill four strangers and actively participated in the murder-for-hire of Catherine Lee; as the Court stated during Stillwell's resentencing, he "track[ed] down a stranger and lure[d] her to her death; and after she [was] shot in the face, discard[ed] her body in a pile of garbage in the rain." 2018 Sentencing Tr. at 10. As it further stated: "[i]f the nature and circumstances of the offense were the only factors I was required to consider, it would

---

[3] These factors include (i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities among similar defendants. 18 U.S.C. § 3553(a).

be hard to say that a life sentence wouldn't be appropriate." *Id.* at 45.  The serious nature and circumstances of Stillwell's crimes are no less troubling today.

The Court recognizes that Stillwell has made meaningful progress towards rehabilitation, including hundreds of hours of community service, completion of coursework, and work as an inmate mentor.  Pet'r's Mot. at 17.  He has maintained a clean record of incarceration, and has no prior criminal history.  And while Stillwell's age was considered at his resentencing, and so need not be considered anew here, *see United States v. Taylor*, 2024 WL 3498646, at *4 (S.D.N.Y. July 22, 2024), he has now completed more than 55% of his overall sentence.  Pet'r's Mot. at 23.  This places him in the range of similarly-situated petitioners for which some judges have granted a sentence reduction.  *See, e.g.*, *United States v. Hernandez Frometa*, 2020 WL 6132296, at *4 (S.D.N.Y. Oct. 19, 2020) (granting release where defendant served over 60 percent of their sentence).  *But see, e.g.*, *United States v. Goode*, 2021 WL 3500012, at *3 (S.D.N.Y. Aug. 7, 2021) (denying compassionate release where defendant served approximately 65 percent of their sentence).

Nonetheless, while the Court commends the progress Stillwell has made while incarcerated, the balance of the Section 3553(a) factors weigh against a reduction in his sentence at this point in time.  In particular, the Court finds that the nature and circumstances of Stillwell's offense, as well as the need for the sentence to provide just punishment and deter others from engaging in similarly egregious conduct, outweigh any such progress towards rehabilitation, for the reasons articulated at his original 2018 sentencing and 2022 resentencing.  2018 Sentencing Tr. at 9–10; 2022 Resentencing Tr. at 44–46.

## CONCLUSION

Accordingly, Stillwell's motion for compassionate release is denied.  The Clerk of Court

is respectfully directed to close the motion pending at Dkt. 926. The Clerk of Court is respectfully

directed to mail a copy of this order to Mr. Stillwell (30983-057) at Federal Correctional Institution

Butner Low, P.O. Box 999, Butner, NC 27509.

SO ORDERED.

Dated:         February 3, 2026
               New York, New York

_____
Ronnie Abrams
United States District Judge