UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL DAVID STILLWELL,<br><br>Defendant. | No. 13-CR-521 (RA)<br><br>MEMORANDUM<br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

On April 18, 2018, Defendant Carl David Stillwell was convicted of murder-for-hire and related crimes for his participation in the death of Catherine Lee.  By letter dated March 29, 2025, Stillwell moved *pro se* for compassionate release.  Dkt. 926 ("Pet'r's Mot.").  In an Opinion and Order dated February 3, 2026, the Court denied Stillwell's petition.  Dkt. 984 ("Op."); *see United States v. Stillwell*, 2026 WL 276018 (S.D.N.Y. Feb. 3, 2026).  Stillwell now moves for reconsideration, Dkt. 988 ("Pet'r's Reconsideration Mot."), which the Government opposes.  Dkt. 933 ("Gov. Reconsideration Opp'n").  Stillwell argues that the Court erred in concluding that he was not "suffering from a medical condition that requires long-term or specialized care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1)(C); *see* Pet'r's Reconsideration Mot. at 1.  For the reasons that follow, Stillwell's motion is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this matter, and sets forth only that necessary for the instant Memorandum Opinion and Order. Stillwell was convicted of murder-for-hire and related crimes for his participation in a conspiracy

which resulted in the death of Catherine Lee in the Philippines.  Dkt. 615 ("PSR") ¶¶ 16–59.  On October 21, 2022, the Court sentenced Stillwell to 240 months' imprisonment.  Dkt. 836 at 46.

Stillwell moved for compassionate release by letter dated March 29, 2025.  *See* Pet'r's Mot. at 1.  In that motion, he argued that there were three extraordinary and compelling reasons to grant his release, namely "(i) his medical circumstances, (ii) his rehabilitation efforts and his unlikelihood to recidivate, and (iii) Section 1B1.13's catchall provision."  Op. at 5; *see* Pet'r's Mot. at 6–18.  Stillwell also argued that the sentencing factors set forth in 18 U.S.C. § 3553(a) weighed in favor of his compassionate release.  Pet'r's Mot. at 19–25.

Stillwell suffers from many chronic and acute health conditions:  type II diabetes, stage 3 chronic kidney disease, proteinuria, hypertension, hyperlipidemia, gout, iron deficiency anemia, retinopathy, glaucoma, and cellulitis.  Pet'r's Mot., Ex. B ("Ashby Aff.").  He also suffers from a brain aneurysm and cervical spinal stenosis.  Pet'r's Mot., Ex. F ("Stillwell Aff.") ¶¶ 4, 6; *see* Ashby Aff. at 2.  Stillwell discussed these medical conditions in his original motion, and they now form the basis for the instant motion for reconsideration.  *See* Pet'r's Reconsideration Mot. at 2–3.

In support of his original motion, Stillwell submitted an affidavit from Dr. Bernard Ashby, a vascular cardiologist.  *See* Ashby Aff.  Dr. Ashby examined Stillwell's medical records and concluded that those records "suggest[] that his care has not been aligned with current best practices."  *Id.* at 5.  Dr. Ashby opined that:

> I am apprehensive that the correctional environment presents substantial barriers to Mr. Stillwell's ability to effectively manage his serious medical conditions.  The constraints of incarceration inherently limit . . . [Mr. Stillwell's] access to resources, self-care opportunities, and timely, specialized medical attention.  Should Mr. Stillwell experience an acute medical event, I believe the prison environment may not be equipped to respond adequately, potentially leading to catastrophic consequences.  Without access to advanced, expert-level, multidisciplinary care, I fear that Mr. Stillwell's incarceration will tragically

accelerate his morbidity and result in premature mortality.

*Id.* Ashby also concluded that Stillwell's "multiple chronic conditions . . . substantially diminish his ability to provide self-care within the correctional facility," and that his chronic conditions are "progressive and irreversible." *Id.* at 1–2.

The Court denied Stillwell's petition for compassionate release by Opinion and Order dated February 3, 2026. The Court identified two independent grounds for denial. First, it concluded that Stillwell had not identified any extraordinary and compelling reasons to grant release. Op. at 5–11. Second, it concluded that "[e]ven if Stillwell had shown an extraordinary and compelling reason to justify a sentence reduction, the sentencing factors in 18 U.S.C. § 3553(a) weigh against granting such a reduction." *Id.* at 11–12. After the Court denied his motion for compassionate release, Stillwell filed a notice of appeal to the Second Circuit. Dkt. 990. He also filed the instant motion for reconsideration.[1]

## LEGAL STANDARD

"While the Federal Rules of Criminal Procedure do not specifically address motions for reconsideration, such motions have traditionally been allowed within the Second Circuit." *United States v. Whaley*, 2024 WL 2846952, at *1 (E.D.N.Y. June 5, 2024).[2] "The standards for reconsideration among the civil and criminal rules are largely the same." *United States v. Daugerdas*, 2020 WL 4931988, at *2 (S.D.N.Y. Aug. 18, 2020). These standards are "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to

---

[1] Stillwell styled this motion as one "to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e)." Pet'r's Reconsideration Mot. at 1. As the Government observes, however, there is no judgment to alter or amend; rather, Stillwell appears to be seeking reconsideration of the Court's ruling. *See* Gov. Reconsideration Opp'n at 1.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Columbo v. Philips Bryant Park LLC*, 2025 WL 1043685, at \*1 (S.D.N.Y. Apr. 8, 2025) ("A court will grant reconsideration when a movant demonstrates an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice."). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Whaley*, 2024 WL 2846952, at \*1.

Ordinarily, "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "A federal district court retains jurisdiction, however, to deny a motion for reconsideration while an appeal is pending." *Mercado v. Sing Sing Corr. Facility*, 2026 WL 880497, at \*1 (S.D.N.Y. Mar. 31, 2026); *see Jin Zhao v. State Univ. of N.Y.*, 613 F. App'x 61, 62 (2d Cir. 2015) (summary order). The Court may, therefore, consider Stillwell's motion "notwithstanding his filing of a notice of appeal." *Mercado*, 2026 WL 880497, at \*1.

## DISCUSSION

Stillwell argues that the Court should reconsider its determination that his medical conditions did not constitute an extraordinary and compelling reason to grant compassionate release. The Sentencing Commission has identified specific categories of medical circumstances that are extraordinary and compelling. *See* U.S.S.G. § 1B1.13(b)(1). Stillwell asserts that the Court erred in denying his petition because the record evidence demonstrates that he suffers from medical conditions "that require long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.*

4

§ 1B1.13(b)(1)(C); *see* Pet'r's Reconsideration Mot. at 1. Stillwell appears to be arguing that the Court did not appropriately credit Dr. Ashby's assessment that "without access to advanced, expert-level multidisciplinary care, I fear that Mr. Stillwell's incarceration will tragically accelerate his morbidity and result in premature mortality." Ashby Aff. at 5.

The Court does not doubt that Stillwell suffers from serious medical conditions that negatively affect his quality of life. As both he and the Court recognize, however, "[t]he decisive question is not whether Stillwell would fare better and receive better care if living at home. It is how Stillwell's medical conditions measure against the demanding standards set by the Sentencing Commission for when such condition(s) are *extraordinary and compelling*." Op. at 4 (emphasis in original); *see* Pet'r's Reconsideration Mot. at 2 (same); *United States v. Teman*, 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024) (same); *United States v. Krupkin*, 2024 WL 3637996, at *3 (S.D.N.Y. Aug. 1, 2024) (same). Courts construing Section 1B1.13(b)(1)(C) have found that a defendant "must show that 1) 'the defendant is suffering from a medical condition that requires long-term or specialized medical care'; 2) this medical care is 'not being provided'; and 3) without that care 'the defendant is at risk of serious deterioration in health or death.'" *United States v. Radulescu*, 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024) (quoting U.S.S.G. § 1B1.13(b)(1)(C)). The Court has reviewed anew the record evidence submitted by the parties, as well as Dr. Ashby's affidavit, and agrees with its prior conclusion that Stillwell has not met the "demanding standards" imposed by the law to justify a sentence reduction pursuant to Section 1B1.13(b)(1)(C) because he has not demonstrated that appropriate medical care is not being provided to him. *Teman*, 2024 WL 262781, at *6.

The record evidence—which was discussed at length in the Court's prior Opinion and Order and was not addressed by Stillwell in his motion for reconsideration—demonstrates that

Stillwell's health is being "monitored and managed by medical professionals, including . . . [FCI Butner] medical staff and, when necessary, outside health care providers." *United States v. Panos*, 2026 WL 221245, at *10 (S.D.N.Y. Jan. 27, 2026); *see United States v. Yeghoyan*, 2025 WL 2792569, at *5 (S.D.N.Y. Oct. 1, 2025) (similar). He has been seen by outside specialists at Duke for an evaluation of his aneurysm and spinal stenosis. Dkt. 933 ("Gov. Opp'n"), Ex. A, at 11, 471–72. He has also repeatedly been seen within FCI Butner for his other chronic health conditions, *e.g.*, *id.* at 3, 19–23, and received regular—at times daily—dressings for his cellulitis. *See id.* at 2. Furthermore, Stillwell has had consultations with a registered dietician and has been prescribed GLP-1 medications to manage his type II diabetes. *E.g.*, *id.* at 68. As the Court explained in its Opinion and Order, "the record reflects that 'BOP has provided—and continues to provide—significant, rather constant, medical care to' Stillwell, including 'multiple medical appointments[,] the prescription of various medications, as well as referrals to outside medical specialists for consultations and tests.'" Op. at 7–8 (quoting *Radulescu*, 2024 WL 4200388, at *1). In view of this evidence, the Court determined that it "does not support a finding that . . . [Stillwell] requires long-term or specialized medical care that he has not been able to access in custody." Op. at 8. In other words, the Court concluded that Stillwell had not established that "long-term or specialized medical care" was "not being provided." U.S.S.G. § 1B1.13(b)(1)(C).

Stillwell has neither presented any new evidence which would change this assessment nor established that the Court's prior conclusion was erroneous. In its Opinion and Order, the Court reviewed Dr. Ashby's affidavit and concluded that it did not support a finding that his medical conditions constituted an extraordinary and compelling circumstance. The Court does not alter its finding on reconsideration. Stillwell primarily points to Dr. Ashby's conclusory statement that

6

"[w]ithout access to advanced, expert-level, multidisciplinary care, I fear that Mr. Stillwell's incarceration will tragically accelerate his morbidity and result in premature mortality." Ashby Aff. at 5; *see* Pet'r's Reconsideration Mot. at 2. Dr. Ashby, though, did not explain in what ways Stillwell's current level of medical care is insufficient, or what evidence gives rise to such concern. Indeed, Dr. Ashby appears to acknowledge the extensive care Stillwell has received in his Affidavit, in which he details that Stillwell has received ophthalmology, nephrology, radiology, dermatology, neurosurgery, and occupational therapy consultations, has been prescribed over twenty different medications, and has received two ultrasounds and a cervical spine MRI. Ashby Aff. at 3–4. Nor did Dr. Ashby substantiate his "belie[f]" that "the prison environment may not be equipped to respond adequately" to an "acute medical event" suffered by Stillwell. *Id.* Ashby thus does not explain why the Court should conclude that Stillwell requires other long-term or specialized medical care that is not being provided, and why the absence of that care would lead to "a risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

At bottom, Ashby opines that "the constraints of incarceration inherently limit . . . [Stillwell's] access to resources . . . and timely, specialized medical attention." Ashby Aff. at 5. The Court recognizes that "better medical care can be found outside prison walls," but ultimately concludes that "BOP is capable of providing . . . [Stillwell] with adequate medical care, and appears to be doing so," through the provision of medical care at FCI Butner and through consultations with outside specialists at Duke.[3] *United States v. Binday*, 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020); *see also United States v. Bradley*, 2023 WL 3004660, at *2 (S.D.N.Y. April 19, 2023) (denying compassionate release where "[d]efendant's health records indicate that

---

[3] As other courts have recognized, too, "the Butner complex includes a Federal Medical Center, a full working hospital capable of providing inmates with in-patient and skilled-nursing care," *United States v. Korn*, 2020 WL 1808213, at *5 (W.D.N.Y. Apr. 9, 2020), and which is "maintained specifically for inmates in need of medical care." *United States v. Madoff*, 465 F. Supp. 3d 343, 350–51 (S.D.N.Y. 2020).

the BOP is monitoring and managing his health conditions in an adequate manner"); *Teman*, 2024 WL 262781, at *8 (similar). "Again, the [C]ourt does not doubt the seriousness" of Stillwell's medical "conditions or the difficulties they pose to him, but the court does not see evidence of inadequate care" that rises to the demanding standard required by law before a sentence reduction should be granted. *United States v. Estremera*, 2024 WL 3593718, at *3 (D. Conn. July 30, 2024).

Even if Stillwell's medical conditions were to constitute an extraordinary and compelling justification for a sentence reduction, however, the sentencing factors in 18 U.S.C. § 3553(a) counsel against granting such a reduction. As the Court explained in its Opinion and Order:

> The nature and circumstances of Stillwell's offense weigh most heavily against him. Although Stillwell characterizes his crimes as "non-violent," his own counsel and the Court rightly characterized them in his 2022 resentencing as "heinous." Stillwell sought to kill four strangers and actively participated in the murder-for-hire of Catherine Lee; as the Court stated during Stillwell's resentencing, he "tracked down a stranger and lured her to her death; and after she was shot in the face, discarded her body in a pile of garbage in the rain." As it further stated: "if the nature and circumstances of the offense were the only factors I was required to consider, it would be hard to say that a life sentence wouldn't be appropriate." The serious nature and circumstances of Stillwell's crimes are no less troubling today. . . . [T]he Court finds that the nature and circumstances of Stillwell's offense, as well as the need for the sentence to provide just punishment and deter others from engaging in similarly egregious conduct, outweigh any such progress towards rehabilitation.

Op. at 11–12. The Second Circuit has held that a "district court's finding that a sentence reduction . . . [is] unwarranted under the section 3553(a) factors . . . [is] an independently sufficient ground on which to deny compassionate release." *United States v. Reyes*, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (summary order); *see United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam) ("[A] district court's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release."). In the instant motion, Stillwell makes no argument that the Court should reconsider its determination that the Section 3553(a) factors "weigh against a reduction in his sentence at this point in time," Op. at 12,

and the Court can identify no other reason to do so.

## CONCLUSION

Accordingly, Stillwell's motion for reconsideration is denied. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 988, and to mail a copy of this order to Mr. Stillwell (30983-057) at Federal Correctional Institution Butner Low, P.O. Box 999, Butner, NC 27509.

SO ORDERED.

Dated:        May 14, 2026
              New York, New York

_____
Ronnie Abrams
United States District Judge

9